# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE) PRODUCTS LIABILITY LITIGATION

MDL NO 2924
20-MD-2924

JUDGE ROBIN L ROSENBERG
MAGISTRATE JUDGE BRUCE REINHART

_____/

THIS DOCUMENT RELATES TO:

JURY TRIAL DEMANDED

**DANIEL HUBERT**

(Plaintiff Name(s))

## SHORT-FORM COMPLAINT

The Plaintiff(s) named below, by counsel, file(s) this Short Form Complaint against Defendants named below. Plaintiff(s) incorporate(s) by reference the allegations contained in the Master Personal Injury Complaint ("MPIC") in In re: Zantac (Ranitidine) Products Lability Litigation, MDL No. 2924 (S.D. Fla). Plaintiff(s) file(s) this Short-Form Complaint as permitted by Pretrial Order No. 31.

Plaintiff(s) select(s) and indicate(s) by completing where requested, the Parties and Causes of Actions specific to this case. Where certain claims require additional pleading or case specific facts and individual information, Plaintiff(s) shall add and include them herein.

Plaintiff(s), by counsel, allege as follows:

### I.   PARTIES, JURISDICTION, AND VENUE

#### A. PLAINTIFF(S)

1. Plaintiff(s) DANIEL R. HUBERT

   ("Plaintiff(s)") brings this action (check the applicable designation):

   a) On behalf of [himself/herself];

2. Injured Party is currently a resident and citizen of (City, State) KEMPTX and claims damages as set forth below.

—OR—

Decedent died on (Month, Day, Year) _. At the time of Decedent's death, Decedent was a resident and citizen of (City, State) _.

If any party claims loss of consortium,

3. ("Consortium Plaintiff") alleges damages for loss of consortium.

4. At the time of the filing of this Short Form Complaint, Consortium Plaintiff is a citizen and resident of (City, State) _.

5. At the time the alleged injury occurred, Consortium Plaintiff resided in (City, State) _.

### B. DEFENDANT(S)

6. Plaintiff(s) name(s) the following Defendants from the Master Personal Injury Complaint in this action:

   a. **Brand Manufacturers:**
      Boehringer Ingelheim Pharmaceuticals, Inc.
      GlaxoSmithKline LLC
      GlaxoSmithKline PLC
      Pfizer Inc.
      Sanofi US Services Inc.
      Sanofi-Aventis U.S. LLC

   b. **Generic Manufacturers:**

   c. **Distributors:**
      Chattem, Inc.

   d. **Retailers:**

   e. **Repackagers:**

   f. **Others Not Named in the MPIC:**

### C. JURISDICTION AND VENUE

7. Identify the Federal District Court in which Plaintiff(s) would have filed this action in the absence of Pretrial Order No. 11 (direct filing) [or, if applicable, the District Court to which their original action was removed]:

   Northern District of TX

8. Jurisdiction is proper upon diversity of citizenship.

## II. PRODUCT USE

9. The Injured Party used Zantac and/or generic ranitidine: [Check all that apply]

    ___ By prescription

    _X_ Over the counter

10. The Injured Party used Zantac and/or generic ranitidine from approximately (month, year) 1985 to 2016.

## III. PHYSICAL INJURY

11. As a result of the Injured Party's use of the medications specified above, [he/she] was diagnosed with the following specific type of cancer (check all that apply):

| Row No. | Cancer Type | Approximate Date of Diagnosis |
|---|---|---|
| 1 | OTHER CANCER: Prostate, again | 07/5/2019 |
| 2 | PROSTATE CANCER | --/--/1999 |

12. Defendants, by their actions or inactions, proximately caused the injuries to Plaintiff(s).

## IV. CAUSES OF ACTION ASSERTED

13. The following Causes of Action asserted in the Master Personal Injury Complaint are asserted against the specified defendants in each class of Defendants enumerated therein, and the allegations with regard thereto are adopted in this ShortForm Complaint by reference.

| Row No. | COUNT | Cause of Action |
|---|---|---|
| 1 | I | STRICT PRODUCTS LIABILITY – FAILURE TO WARN |
| 2 | II | STRICT PRODUCTS LIABILITY – DESIGN DEFECT |
| 3 | IX | BREACH OF EXPRESS WARRANTIES |
| 4 | VII | GENERAL NEGLIGENCE |
| 5 | X | BREACH OF IMPLIED WARRANTIES |
| 6 | XVI | OTHER:BATTERY |
| 7 | XVII | OTHER:FRAUD BY OMISSION |

| Row No. | COUNT | Cause of Action |
|---|---|---|
| 8 | XVIII | OTHER:VIOLATION OF TEXAS PRODUCT LIABILITY ACT, TCPRC 82.001, et seq. |

If Count XVI or Count XVII is alleged, additional facts supporting the claim(s):

BATTERY: 1) Since Glaxo invented ranitidine, and as fully set forth above, each Defendant knew that when ingested, Zantac metabolizes and forms high levels of NDMA in the body. During the period of time each Defendant sold Zantac, it knew Zantac formed excessive levels of NDMA in the body. 2) Decades before Zantac was first commercially sold in the United States in 1983, Glaxo knew that NDMA was carcinogenic. Each Defendant also knew at the time they sold Zantac that NDMA was a potent carcinogen. 3) At the time each Defendant manufactured and sold Zantac, it manufactured and sold Zantac for the express purpose of being used by unwitting consumers, who didn't know that when ingested, Zantac formed excessive levels of NDMA in the body. Therefore, at all relevant times, Defendants knew that was certain or substantially certain that Hubert would be subjected to excessive levels of NDMA upon ingestion of Zantac, which they manufactured and sold. 4) Hubert ingested Zantac, and, as a result, was exposed to excessive amounts of NDMA. 5) Hubert's exposure to NDMA was caused directly by Defendants. 6) No reasonable person would want to be subjected to excessive levels of a potent carcinogen, and thus, Hubert's exposure to NDMA constituted an offensive contact caused by Defendants. 7) Although Hubert voluntarily ingested Zantac, at no time did Hubert know that Zantac ingestion resulted in the formation of excessive levels of NDMA in the body. 8) If Hubert had known this, he would not have taken Zantac. Hubert never consented, implicitly or explicitly, to ingesting a substance that would lead to the formation of large amounts of NDMA. 9) Defendants' battery upon Hubert proximately caused his injuries and damages.

FRAUD BY OMISSION: 1) At all times, Defendants had a duty to exercise ordinary care in the design, manufacture, marketing, and sale of its pharmaceutical products, including Zantac. 267. Defendants have a duty to refrain from selling unreasonably dangerous products, including the duty to ensure that their pharmaceutical products do not cause patients to suffer from foreseeable risks of harm. 2) Defendants had a duty to monitor the adverse effects associated with pharmaceutical products, including Zantac. 3) Defendants have a duty to exercise reasonable care when they undertake affirmative acts for the protection of others. 4) Defendants owe these duties to Hubert because it was foreseeable to Defendants that patients like Hubert would ingest and consequently be endangered by Zantac. 5) Defendants also owed a duty to speak because they were in possession of information about Zantac that was not readily available to Hubert and Hubert's physicians, made misrepresentations about the safety of Zantac to Hubert and Hubert's physicians while suppressing material facts, and actively concealed material information about Zantac from Hubert and Hubert's physicians, including that when ingested, Zantac formed high levels of NDMA and other dangerous and carcinogenic metabolites in the human body. Defendants advertised and promoted Zantac as being safe, Defendants had a duty to speak and reveal the fact that they knew when ingested, Zantac formed NDMA and other harmful metabolites in the body. 6) Defendants knew that this information was not readily available, and Hubert and his doctors did not have an equal opportunity to discover the truth. Hubert and his doctors had no practicable way of discovering the true state and timing of Defendants' knowledge. 7) Defendants intentionally omitted from their prescriber and patient labeling any type of warning alerting patients and their physicians that when ingested, Zantac forms high levels of NDMA and other harmful metabolites in the body. 8) And, given that Defendants advertised and promoted Zantac as being safe, Defendants had a duty to speak and reveal the fact that they knew when ingested, Zantac formed NDMA and other harmful metabolites in the body. 9) Hubert and his doctors justifiably relied on Defendants' product labeling and other representations. 10) Had Defendants not omitted this information about the safe use of their drugs from the prescriber and patient labeling, doctors would not have prescribed (or recommended), and patients would not have taken Zantac. But for Defendants' omissions, Hubert would not have consumed Zantac. 11) If Hubert had been properly warned about the dangers of Zantac use, he would not have taken Zantac, and would not have developed his injuries, or been at risk for developing cancer from Zantac usage. 12) Hubert and his doctors justifiably relied on Defendants' omissions regarding Zantac. 13) Had Hubert disclosed that they were aware of, but intentionally withheld, that Zantac forms NDMA and other harmful metabolites in the

body once ingested, Hubert would not have ingested Zantac. 14) Hubert was injured and suffered damages
as a direct and proximate result of Defendants' material omissions.

VIOLATION OF TEXAS PRODUCT LIABILITY ACT, TCPRC 82.001, et seq: 1) Defendants sold or otherwise put Zantac products into the stream of commerce in a defective condition unreasonably dangerous to ordinary users like Hubert incorporates by reference every allegation set forth in the preceding paragraphs as if fully stated herein. 2) Zantac was expected to, and did, reach users like Hubert without substantial alteration in the condition in which Defendants manufactured and sold it. 3) Defendants are "manufacturers" as that term is used in Tex. Civ. Prac. & Rem. § 82.001. 4) Zantac is defective in design and Defendant failed to adequately warn about the dangers and proper use of Zantac. 5) A safer alternative design for Zantac existed. 6) Using the safer alternative design would have prevented or significantly reduced the risk of Hubert's injuries without substantially impairing the product's utility. 7) The safer alternative design was economically and technologically feasible at the time the product left the control of the manufacturer by the application of existing or reasonably achievable scientific knowledge. 8) At the time Zantac left Defendants' control, Zantac was in a defective condition not contemplated by reasonable persons among those considered expected users or consumers of the products and that will be unreasonably dangerous to the expected, ultimate user or consumer when used in reasonably expected ways of handling or consumption. 9) Zantac is dangerous to an extent beyond which would be contemplated by the ordinary user and consumer, with ordinary knowledge common to the community as to the product's characteristics. 10) Zantac is defective because the Defendant failed to properly and adequately label Zantac to give reasonable warnings of the danger about Zantac. If such warnings were provided, the harm would have been avoided. 11) Further, all of the Zantac products described herein are defective in their design, formula, preparation, testing, warnings, instructions, marketing, packaging, and labeling. 12) The defective condition of Zantac rendered it unreasonably dangerous to ultimate users like Hubert. 13) Defendants misrepresented the safety of Zantac. 14) Further, Defendants breached implied and express warranties by placing Zantac into the stream of commerce, knowing it was defective in its design, formulation, standards, preparation, testing, warning, instruction, marketing, advertising, and labeling. 15) Hubert is in the class of persons who are ordinary consumers who purchased Zantac, with the ordinary knowledge common to the community about the products' characteristics. 16) Zantac was not known to be unsafe by the ordinary consumer with ordinary knowledge common to the community. 17) Defendants failed to exercise reasonable care under the circumstances in designing Zantac and in providing warnings or instructions regarding the dangerous propensities of Zantac. 18) At the time Zantac left Defendants' control, the risks of users like Hubert developing injuries from Zantac use were known or reasonably foreseeable to Defendants. 19) At the time Zantac left the Defendant's control, the inherent, foreseeable and known risks associated with the design exceeded the benefits of the design. 20) Zantac did not comply with the state of technical, scientific, or medical knowledge generally prevailing at the time the product left control of the manufacturer. 21) Hubert exercised reasonable care in the use of Zantac. 22) The defective and unreasonably dangerous condition of Zantac was a producing cause of Hubert's damages. 23) Defendants acted with reckless disregard for the rights and safety of Hubert and acted with intentional and wanton violation of those rights. Hubert seeks punitive damages for injuries caused by Defendant's wanton and malicious conduct.

## V.   JURY DEMAND

14.   Plaintiff(s) hereby demand(s) a trial by jury as to all claims in this action.

## VI.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff(s) has/have been damaged as a result of Defendants' actions or inactions and demand(s) judgment against Defendants on each of the above-referenced causes of action, jointly and severally to the full extent available in law or equity, as requested in the Master Personal Injury Complaint.

Attorney 1 Signature: /s/ T Nguyen          Attorney 1 Signature:

Attorney 1 Print: T Nguyen                  Attorney 1 Print:

| | |
|---|---|
| Attorney 2 Signature: | Attorney 2 Signature: |
| Attorney 2 Print: | Attorney 2 Print: |
| Firm: Turley Law Firm | Firm: |
| Address1: 6440 N Central Expy Ste 1000 | Address1: |
| Address2: | Address2: |
| City: Dallas | City: |
| State: TX | State: |
| Zip: 75206 | Zip: |
| E-mail: tn@wturley.com, davette@wturley.com | E-mail: |
| Phone: 214-691-4025 | Phone: |